Case No. 15-1447, State Corporation Commission of the State of Kansas Petitioner v. Federal Energy Regulatory Commission Mr. Coyle for the petitioner, Ms. Priscilla for the respondent Good morning, Your Honors. Good morning, Court. John Coyle of the firm Duncan & Allen for the State Corporation Commission of the State of Kansas. Petitioner today. If the Court's agreeable, I'd like to reserve three minutes of my time for rebuttal. FERC's orders under review in this proceeding proved as just and reasonable under Section 205 of the Federal Power Act a package of concessions developed by the management of the Southwest Power Pool, a regional transmission organization, in order to induce Basin Electric Cooperative Heartland Consumer Power District and the Western Area Power Administration Upper Great Plains Region to join the SPP. Those concessions exempted Basin Heartland and Western from any allocation of the costs of regional transmission facilities that were needed prior to October 1, 2015, which is the date on which those three entities, Basin Heartland and Western Now that's reciprocal, right? Your Honor, if I could, the notion of reciprocity here requires a bill of The objections to or qualities of reciprocity, is it not reciprocal? I would say no, Your Honor. The Commission said yes, and I would say no. And I think that's one of the failures of reasoned decision-making in this case. Every entity that joins the Southwest Power Pool bears the cost of its own, quote, without reasoned explanation from its treatment of regional cost allocation in this case, was to say, well, it's okay to forego it in this case because the existing, the 18 existing transmission owners in the SPP and their customers get reciprocal access to the transmission systems of Basin Heartland and Western. That's not reciprocal. I think you're mixing two things, whether the pricing system changed from at least the treatment of the Nebraska entities, which appears to be conceded, or whether it is reciprocal in the sense that the two joining parties, the pricing of the legacy facilities for the two joining parties are treated the same way. You could switch the names and describe the pricing rule, and it would not change anything. I don't mean to grind gears with you, Your Honor, and it may be that I'm missing your point. But everybody else who joined the SPP, all of the other 18 But that's the interesting issue of the historical pattern. But it doesn't seem to address the particular case of these two entities joining. Let me try it this way then, Your Honor. I think that the characterization of the cost concession as reciprocal is based on a false equivalence between the regional cost allocation of regional facilities, facilities developed on a regional basis by the Southwest Power Pool, which is universal, and whether an entity joining the pool recovers the cost of its own transmission facilities, the transmission facilities it built before joining the pool through the pool. Does that make sense? I think I'm with you so far. I'm not sure where you're going. Well, my point is that everybody else got treated one way. That is to say, everybody, every transmission. That's back to the historical question of whether there's a deviation from historical treatments. It also deals with what the philosophy of regional cost allocation is. When the commission approved Yeah, whether there's a philosophy seems questionable. When the commission approved, when the clerk approved the current cost allocation regime in 2010 and what we call the highways and byways were, 133 FERC, you'll pardon me for missing the, 131 FERC, sorry, paragraph 61-252. FERC said that the extra high voltage, the EHV facilities that were being developed on a regional basis, provided benefits to everyone, and that, therefore, it was appropriate to allocate the cost of those facilities on a regional basis. Those are the base plan facilities that you see discussed in the opinion. And now, all of a sudden, Basin and Heartland, I mean, I'll clarify that we are not, excuse me, the Kansas Commission is not contesting the treatment of Western because that was based on Section 1232 of the Energy Policy Act of 2005, and it raises a different issue. So we're not contesting it as to Western because of that difference in the rationale, but as to Basin and Heartland, it is not reasoned decision-making for the commission to say, on the one hand, base plan facilities should have their costs allocated regionally because they benefit everybody, and nobody who joined the Southwest Power Pool ever had the facilities that they brought into the pool allocated regionally. But then along come Basin and Heartland, and all of a sudden the waiver is just fine. That, the notion of the waiver of cost allocation here is reciprocal, is to my mind one of the stunning examples of a failure of reasoned decision-making in this order because the commission deviates from the principles that it adopted in the 2010 Highways-Byways work without a credible explanation. I mean, their explanation, like yours, Judge Williams, is, well, it was reciprocal. It's not reciprocal. Nobody's ever had regional cost allocation of the facilities that they brought into the pool. So there's no waiver of expectations here that Basin and Heartland would have achieved regional cost support for the facilities that they brought in with them. When you keep saying nobody, you're brief-talking about Nebraska. That's right, Your Honor. What other examples are there? I'm aware of, well, examples of. . . You say there's this long history of everybody. Yeah. And if there are these legacy costs, then the only thing you talked about was Nebraska. I think if you look at Appendix H to the tariff, which contains the now 19 APRR zones, every one of the other 18 recover a transmission revenue requirement for what the FERC is pleased to call, quote, legacy systems in this case. So when I say . . . Is it . . . I'm sorry. First, it appears to be the case that the treatment of the joining of the Nebraska entities was not contested so that FERC, in fact, doesn't explain what it's doing because it's not doing anything. It's saying what the parties agree on is okay. At least we don't see anything wrong with it. Do you agree that that's the case as to the Nebraska entities? It is the case, Your Honor. Moreover, that is an unreported letter order that's a dubious precedential. Okay. So then can we go back to the other ones that you say are, or at least may be, working as precedent of some sort? Right. Are those also 100 percent consensual deals? To be honest, Your Honor, I don't know. I believe so. Because, I mean, if they aren't and the first time that FERC passes on an objection like yours, it's not clear to me why it should follow something that other parties worked out among themselves. I think I can respond to that. Which is, and again, I don't mean to cover the same ground, but you have a FERC holding that says regional cost allocation of base plan facilities is appropriate because those facilities benefit everyone. Except we're going to exempt Basin and Heartland because why? Because they didn't want to pay it? Because inducing them to join expands the SPP footprint? Because that's, when you get right down to it, those are the only considerations that the record supports, and those are not rational reasons to excuse a utility from transmission cost allocation. You're representing Kansas consumers. That's correct. And I guess your alleged injury is that prices, costs are going to be higher. That's correct. Because these legacy costs aren't getting spread around. That's correct. But that's a harm from integration. But if there's no integration, reject this inclusion of the IS parties. Right. The costs are exactly the same. Because there's no integration and everyone's still paying the exact same legacy costs. So where's the consumer injury from this argument? Well, the consumer injury, as Your Honor said, is in the subsidization because the- Well, you have to have increased prices. You have to show that prices are different between integration and non-integration. Because your only argument here is one as to increased consumer prices. And if the consumers are going to have to pay for these legacy costs, whether or not there's an integration, I'm not having trouble seeing what the injury is. I think that doesn't quite exactly characterize the argument, which is really that this is undue discrimination, that there was a special- No one discriminated against Kansas consumers. It does, Your Honor, because the Kansas consumers had to pay regional cost allocation and pay the costs- Well, they have to do it if the integration is rejected. Either way, they're going to pay for these costs. Sure. If your argument is there could have been a better deal, is that the argument? Well, excuse me. The discrimination is that the deal that was cut to induce Basin and Heartland to join was discriminatory and preferential to those entities. Yeah. And so there should be no integration? Whether there's integration or not, you can't fund the integration and finance the integration on the backs of a subsidy from Kansas ratepayers. I thought you were basically saying there was a deal that was better for Kansas that was available and that Kansas asked for and didn't get. Fair enough, Your Honor. Kansas wasn't given the opportunity, and that gets to the second shortcoming in the order, if the Court will indulge me. The firm's alternative rationale for foregoing regional cost allocation was if we forego regional cost allocation, there are all these benefits that will inure to everybody in the Southwest Power Pool as a result of integration. Part of that's your point, Judge Millett. And the claim of benefits has no substantial evidentiary support in this record. I mean, I agree it's vague, but there is considerable stress, at least, on the access of the old SBP members to the new facilities. We could talk about that, Your Honor. The stress was actually laid on the claim of $334 million nominal over 10 years in benefits that Mr. Monroe, the Chief Operating Officer of the SBP, testified to. The commission accepted unquestionably. The FERC accepted unquestioningly. And 81.5% of that $334 million, or $272,375,000, was based on a proprietary study performed for Basin and Heartland by a utility consultant that Mr. Monroe never saw. Yeah, I mean, you seem to me very strange, because you made it appear in your opening brief as if it was an incredible shell game with the study being concealed and we have inference upon inference and so forth, all we get is the conclusion. But the commission brief points out that there's a website pointing to the study, I mean, linking to the study. And you could have argued in your opening brief, which you never did, that the redactions from that were such as to leave you something that was meaningless, but you never made such an argument. Your Honor, what's linked in a website is not substantial evidence. I think the hypertrophy of that argument appears in the intervener's brief where they're saying that everything that was hyperlinked in these presentations is an item by reference. The commission needs to have an evidentiary basis for its rulings. The only evidentiary basis for the claim of benefits here is three pages of characterization by Mr. Monroe. That's it. Now, the Kansas Commission did start its own proceed because the Kansas Commission was concerned about the railroad being run on this deal. And so they got some more information, and they didn't conclude their investigation because the SBT went ahead and filed it to FERC. The Kansas Commission decided they didn't want to run a proceeding in conflict with a FERC proceeding, and they expected that FERC would allow for a more fulsome inquiry into the facts, which didn't happen. So the hyperlink was in a brief that was submitted to the Kansas Commission or in a brief that was submitted to FERC? I wasn't clear there, was I? I think, Your Honor, that the victim blaming that goes on, at least with the interveners, I'm not sure whether FERC's brief does it or not, was to the fact that materials were made available on the SPP website, and here they are. I thought there was a reference to a link to a brief, and I thought, and you can correct me if I'm wrong, that it was a brief filed with the Kansas Commission and not with FERC. So the hyperlink might not even have been before FERC, but I could be wrong. No, there were hyperlinks in the materials filed with the Kansas Commission. I'm not sure whether they were briefs. I think it was in response to discovery, but there were hyperlinks. My point is simply that the hyperlink isn't part of the evidentiary or the material that's hyperlinked isn't part of the evidentiary record. Can I ask you, how do you understand FERC's role in determining whether something is just and reasonable? Is it, because your argument essentially is that we could have gotten a lot better deal here, right? My argument is that this is discriminatory, but not that we could have gotten a better deal. So you shouldn't have integration at all? Is that the argument? You can't have integration on this record. Right, so you shouldn't have a better deal. Everything should be this, plus they have to pay for legacy costs. Or you could have a better evidentiary record than you do. Excuse me, or you could have an evidentiary record, which you don't have. If what FERC found here is, look, there's benefits on both sides. Maybe there's more benefits on one side than the other. Does that make it unjust? Are there cases you can point me to that say if the benefits are not roughly proportional on both sides, it's unjust and unreasonable, and FERC can't approve it? Or is it as long as there's benefits balancing out on both sides, FERC leaves the rest to the contracting process? The standard, as I think you probably know, is really that the benefits are roughly commensurate with the costs that you're being asked to absorb. And that was expounded most eloquently by Judge Posner in the Seventh Circuit in the Illinois Commerce Commission case on the appeal of opinion number 494, which was the big PJM cost allocation deal. He was not speaking of legacy facilities there, which he stressed very heavily. It runs to both, but he also was not dealing with a preexisting regional cost allocation. The question that was involved in the Illinois Commerce Commission case and in opinion number 494 before the FERC was whether certain 500 kV facilities in eastern PJM could be deemed to benefit utilities in Illinois in particular. And FERC's say so that 500 kV facilities benefit everybody wasn't sufficient in those circumstances. In this case, you have precedent. Judge Posner was very concerned, as always, to get the incentives right, which is not, as far as I can make out, relevant in your objection. In this case, it is an issue I don't raise, except to say that there was undue discrimination here in preference. But the fundamental point is that there was a preexisting commission determination about the cost allocation for extra high-voltage facilities. Which was then flung down and danced upon in order to get Basin and Heartland in. I think I've run enough over my original time. Yes, we'll give you several minutes on rebuttal. Thank you. Thank you. Good morning, Your Honors. Beth Pasella for FERC. I think I'll start off with the cost allocation point. And I think, Judge Williams, the Illinois Commerce Commission case that affirmed in part and reversed in part in PJM, it affirmed the commission's determination regarding cost allocation for existing facilities, which was the same type of cost allocation that the commission approved here. That's that issue before the court here. And so there the court found that that was perfectly okay, not to allocate the cost of existing facilities to others. I take Mr. Coyle to concede that what happened in the Nebraska instance, and I guess prior coalescing that produced SPP, were uncontested, so there was not occasion for a FERC rejection of his claim or endorsement of his claim, one or the other. But he, if I understand it correctly, argues that in the highways-byways decision, that was a framework where the commission endorsed his view of the matter. When the commission approved the highway-byway cost allocation, it was reviewing an FPA Section 205 proposal by PJM, excuse me, by Southwest Power Pool, and it found that that was a just and reasonable cost allocation methodology. In the same circumstance here, we have a Section 205 proposal by Southwest Power Pool to integrate. Yeah, but he says at least that there's language in the commission's highway-byways order that's inconsistent with the FERC disposition here. It's not inconsistent because you can have more than one just and reasonable cost allocation methodology. Yeah, but the commission says both in its order on rehearing and before us, well, you know, there are different rules, different situations, but as far as I can see, it doesn't say what's different. Oh, what's different here, first of all, both were, I mean, what's the same is in the highway-byway proceeding, there was a 205 proposal to allocate costs at the time that way, and now there's a 205 proposal to allocate costs differently, and so the commission looks to see whether the proposal itself is just and reasonable. So that's what's the same about them. What's different about them is at the time, the idea was we want to create, we want to do this type of cost allocation at the highway-byway time, and we're proposing to do it regionally for all the costs that exist right now. Basically, the 205-206 difference. Well, they're both 205s, exactly. I understand. Right, exactly. And then the commission here is looking at the proposal. They're saying, hey, we have the opportunity to have these extensive 9,500 miles of transmission lines with public power joining the region. It's going to help our, it's going to create all kinds of benefits, including getting rid of constraints on the system, and we really want that, and they need these, they need this type of cost allocation, and we believe it's just and reasonable, and the stakeholders believed it was just and reasonable. The only state that's opposed, there are seven states on the regional state committee at the time when this was proposed, and only one even sought a hearing of it, and only one is here on appeal. So it really was something that the region understood was beneficial and was an appropriate cost allocation in the circumstances. And again, it's not a type of cost allocation that's new. Commission does license plate, approves license plate cost allocation proposals often, as it did in PJM. Was the redacted version of the Brattle Group study anywhere, is it anywhere in the record before the commission, hyperlinked or otherwise? It is certainly, it was easy for me to follow the path to find the Brattle study myself. That's not my question. What I'm saying is, is it part, did the commission? Is it in the record before the commission? My brief does not make that point. What my brief argues is that. Can you just tell me whether it's in the record or not? Well, the commission did not speak to looking at the Brattle report. I don't know whether the commission looked at the Brattle, the redacted Brattle study itself. I don't know the answer to that question, Your Honor. But I do know that the Kansas Commission. You don't know whether anyone submitted it in the record? It wasn't submitted as part of the record. Anyone hyperlinked it in the filing with the commission? It is hyperlinked to the protest of the Kansas Commission pointed to Southwest Power Pool, their expert witness, Mr. Monroe's testimony before the Kansas Commission. So he testified not only before FERC, but he testified before the Kansas Commission, before the FERC proceeding. And his testimony had a link. To the Kansas Commission. At the Kansas Commission had a link to the Brattle study. And so, technically, I think it's part of this record. But it's not listed in our certified index to record as being there. I'm sorry. The testimony before the Kansas Commission is in your record. Is that correct? The testimony before the Kansas Commission is in, it is hyperlinked in this proceeding, in a document submitted by the Kansas Commission itself. Okay. And then it's a hyperlink. It's a hyperlink to a hyperlink. To the Brattle study. That's right. But what is in the record for sure is Mr. Monroe's explanation of that the methodology, and it's true. I mean, it's very easy to look at the Brattle report. It's extremely extensive, and all that's missing. But the commission didn't look at the Brattle report. So let's assume that's mulled off from the commission. I don't know. I can't say to you that the commission did look at it. But what I can say is. But if there were objections based on errors in the Brattle report, Kansas was completely free to bring them to the commission's attention. That's exactly the point, Your Honor. That's exactly right. And we know, and, again, we state in our brief that the Kansas Commission had that rejected copy of the Brattle report. And they don't dispute that. And they don't raise any matter regarding that. And, you know, Mr. Bell certainly could have if he saw any problems with the analysis there. And we also know that the confidential information in that report that Mr. Monroe relied on and that Southwest Power Pool relied on in accepting information from the Brattle report, we know that that was provided to the Kansas Commission as well. And they're not making any complaints about that confidential information that underlies the simply two data points that were used in one metric in the benefits analysis. And they're not raising any concerns about that. So the commission knows that they have this information and there's no complaints made about it. Why can't the commission rely on that reasonably as it did here? There's no substantive challenge to it. And so the commission reasonably relied on that here. And let me say this, and it's important. And I regret not having put it in my brief, but this is plainly in the record. If you look at JA-363 regarding the benefits, if you look at JA-363, it's Mr. Bell's testimony. And he says there that even if you remove the reserve sharing benefit, which they challenged on appeal but didn't challenge on rehearing to the commission, and the integrated marketplace benefits analysis from Mr. Monroe's economic benefits analysis, JOIDER would still be economic. And my math comes down to it would be still $27,361,000 net positive on these quantifiable benefits. And that's even besides all the unquantifiable benefits regarding, which are extensive here. And, you know, the commission's... I'm sorry. I'm not seeing this at 363. It's on JA-363. Please ask the question. And I'm sorry if I have the wrong page. JA-363, Mr. Bell is asked the question in his testimony based upon SPP's figures, the unjustified integrated market, that very first question and very first answer. Oh, I see. He says barely. It does say, but it is yes, but barely. And his barely comes out to $27 million. Is that something? So I noticed that sort of when you do the math, it still adds up to plus, even if you back out the integrated marketplace benefits. But is that something that we as a court could rely on or would we have to send it back? Because the commission didn't say. It said, hey, here's the benefits. It didn't say. And even if you got problems with those benefits, we would still determine that this is just and reasonable based on the submath calculation. Can we look? I mean, do we just go look? There's some math here that benefits them either way. I think if you look at the commission's orders in this case, it clearly discusses far more often than unquantifiable benefits. What the commission really was focused on here, it had to look at these other benefits as well, which, again, Mr. Bell has conceded would be still economic. But it needed to look at that as well. But what the commission really focused on in these orders were the unquantifiable, the reliability benefits. Well, it did that against a backdrop where there was also all of these quantifiable benefits. And I'm just asking you about whose role it is if you back out, which is a pretty big, I don't have the chart down for me, 200 and something million dollars to me or something like that. It's a big number. It's one of the biggest numbers there is in the chart. So if they back that out, do we still – I'm asking you, is that something FERC thinks courts should do for it or courts should say 272 million? I think it comes down to that the benefits just have to be roughly commensurate. And even as the Seventh Circuit said, that could be in the millions of dollars. It could be a millions of dollars difference. And what we have here are substantial benefits, not only to – including, again, cutting constraints. I mean, these unquantifiable benefits are extensive. And it seems impossible for me to believe that the commission would have a circumstance, based on these orders, where there's still a net positive in the quantifiable benefits and all the amazing unquantifiable benefits that were – that the existing members – again, unchallenged. These are not challenged benefits. So we have improved grid reliability, improved efficiency, a reduced need for congestion management. And there's a specific example that Southwest Power Pool will now be able to commit and dispatch all generation-affecting west-to-east flows and north-to-south flows on the western edge, which have been causing generation curtailment. So generation curtailments for existing members are now going to be gone on the system. On top of that, there's going to be increased access to lower-priced energy throughout Southwest Power Pool. And all of those unquantifiable benefits are unchallenged. And so that, with the positive net number that Mr. Bell's own testimony, clearly part of this record, shows that the quantifiable benefits are positive as well. That's not – this is not a circumstance that I don't think the Court needs to go back to FERC to feel confident. So remand would be futile. It would be futile. It's clear what they would do is your position. It's not that normally we would do that. But it's so clear what the commission would do here in this circumstance. And, again, I think if you re-look at the orders, there are times where the commission simply talks about the unquantifiable benefits, the reliability and other matters, and doesn't even mention the quantifiable benefits. I really think that was the commission's focus. And is your view of what FERC's role is here when parties come to it with a proposed change to the tariff, that essentially they just sort of look at the roughly proportionate benefits on both sides? Or if they're confronted with an argument that says, oh, my gosh, they sold us down the river. We could have gotten such a better deal. I think that latter is not the standard. The commission gets a Federal Power Act, Section 205 proposal, and the commission needs to determine whether that is just and reasonable. And that – getting a better deal, the commission doesn't have to be the best. It's a negotiated matter. And the commission is very clear here that negotiated proposals is what the commission wants with this type of large integration. So the test is? The test is that it has to be a just and reasonable proposal, cost allocation proposal, that will provide benefits to the existing members. The commission is focused on the existing members, which includes the Kansas Commission's state. As long as more than the benefits are more than whatever costs are associated with the change to the tariff. Then that's what the commission has to find. And the best case for that is? Just general Section 205. Let me see. It's just in 205. That's what – and I apologize. I don't know that I have something. Well, I know the statute said just and reasonable. It's just that FERC has obviously – can help us in understanding what that means. This sounds to me almost like an argument that this was terrible – Kansas was a terrible deal. We're letting these people free ride. They're getting away with all this extra money. On the other hand, the math is the math, and there's still benefits on both sides. And I appreciate you bringing up the free rider notion because the commission explicitly found on this record that there are no – the commission didn't use the term free riders. The commission found explicitly at rehearing order J491, paragraph 41, that there's no subsidization here. And that's because of the reciprocal nature of the cost allocation proposal here. So there's no free ridership here. There's no subsidization. And I think that it probably does come down to that the Kansas commission just wanted a better deal. But that's not the standard. In terms of the need to find benefits, I assume it's net benefits. That's right, Your Honor. That seemed to be what the commission tried to do. Yeah, absolutely. Thank you. Thank you very much. A couple minutes on rebuttal. Thank you, Your Honor. I'll be brief. I picked up four points for counsel's presentation I'd like to respond to. The first is to get to Judge Millett's point about what's the standard. In Section 205, the standard is just and reasonable. You can look at Illinois Commerce Commission. You could look at Judge Kavanaugh's recent decision in the NRG case coming up under PJM. There's a lot of jurisprudence in this circuit about what Section 205 does and does not allow. One of the things, though, that the statute requires and that the Administrative Procedure Act requires is reasoned decision-making. You do not have reasoned decision-making underlying this decision. The SPP regional system is not a legacy system, nor is it a subregion, as FERC described it. In accepting the highway-byway cost allocation method, the FERC found that it, quote, and fairly assigns costs among SPP members. That's 131 paragraph 61-252 and paragraph 76. And FERC further explained that the highway-byway reflects SPP's single-system regional operations in order to enhance the reliability and efficiency of its regional markets, under which the strong, regionally integrated EHV transmission network that results from this process provides benefits to all that are interconnected with it. Now, that's paragraph 78 of the same FERC decision. You can't reconcile that with FERC's characterization here in the case before the court, where it says, this is a license plate concept wherein the integrated system region is treated as one zone and pre-integration SPP region is treated as another for the purposes of cost allocation for existing facilities within each subregion. And that's just and reasonable because it reflects prior investment decisions on each side. That's R144 paragraph 41, JA 491 and 436. That's the fundamental failure of reasoned decision-making in this case, is that you can't reconcile the two messages. The second point I wanted to make is that the stakeholder process is not due process. FERC is due process. You can count heads all you want in the stakeholder process. That does not satisfy the statutory burden under Section 205. On a related point, producing and critiquing the Brattle Report is not part of the Kansas Commission's burden as an intervener in this proceeding. The burden is on the proponent utility, which in this case was the SPP, of justifying the justness and reasonableness of its rate proposal. You review that both for reasoned decision-making and for substantial evidence. In this case, it has neither. Finally, and this is a minor procedural point, I cited with respect to the free rider issue, which FERC actually didn't respond to, a Fifth Circuit decision, El Paso Electric, which was only reported in Lexis at the time even that our final briefs were filed. And there has subsequently been a Fed Third citation to that case. I'll place it on the record, but the Court can give me some direction if you want a 28-J letter on that. You can send the letter. It's El Paso Electric v. FERC, 832 Fed Third, 495, 504-507, Fifth Circuit, 2017. Thank you very much. The case is submitted.
judges: Kavanaugh, Millett, Williams